UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KAPITUS SERVICING, INC                      CIVIL ACTION NO. 22-cv-1316

VERSUS                                       JUDGE TERRY A. DOUGHTY

M A C CONTRACTING GROUP, INC, ET AL          MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Kapitus Servicing, Inc. ("Plaintiff") filed suit in a Virginia state court against a Louisiana debtor and two Louisiana guarantors. After some initial proceedings, Plaintiff discovered what it alleges were fraudulent transfers of the debtor's assets to several Louisiana LLCs in which the guarantors are principals. Plaintiff then dismissed the Virginia suit. Plaintiff, as agent for Invision Funding, LLC, then filed this action against the debtor and the guarantors, as well as another principal and several LLCs alleged to be involved in the transfers of assets.

Two motions to dismiss are before the court. MAC Contracting Group, Inc. (debtor) together with Jesse Hooker and Amber Estess (the guarantors) present a Motion to Dismiss (Doc. 21) on the grounds that a forum selection clause mandated that Plaintiff file this action in Virginia. Michael Estess and the several Louisiana LLCs (the Transferee Defendants) present a Motion to Dismiss (Doc. 20) for failure to state a claim on which relief may be granted; they argue that the Virginia fraudulent transfer law invoked in the complaint is inapplicable to the Transferee Defendants who are all Louisiana citizens with

no ties to Virginia, and the only proper claim against them would be a revocatory action under Louisiana law. For the reasons that follow, it is recommended that both motions to dismiss be denied and that Plaintiff be allowed an opportunity to amend its complaint to clarify the basis for the transfer/revocatory claims.

**Relevant Facts**

MAC Contracting Group, Inc. is a Louisiana corporation that has its principal place of business in Shreveport. Defendants Michael and Amber Estess (believed to be spouses) and Jesse Hooker are alleged to be principals in MAC. MAC borrowed a significant amount of money in February 2020, on the eve of the Covid-19 pandemic. It renewed the loan in May 2020 via a Future Receivables Factoring Agreement ("the Agreement") with Envision Funding, LLC d/b/a Kapitus Servicing. The Agreement is attached to the amended complaint (Doc. 18) as Exhibit 1.

Mr. Hooker and Ms. Estess executed a guaranty in connection with the Agreement, and it is attached to the amended complaint as Exhibit 2. Hooker and Estess guaranteed MAC's performance of all representations, warranties, and covenants, and the parties stated that they understand that the guarantors were only guaranteeing that they would not take any action, or permit MAC to take action, that is a breach of the Agreement.

In the Agreement, MAC authorized Kapitus to collect payments by withdrawing amounts from MAC's bank account. MAC allegedly defaulted on the Agreement by not having sufficient funds in its account to permit some of the scheduled withdrawals. Plaintiff alleged that, after the default, it visited Mr. Estess and Mr. Hooker and learned that MAC had materially changed its business model. MAC was no longer taking on the

highly profitable contracts that it disclosed at the time of the loan application. Rather, in lieu of downsizing, it was taking jobs on which MAC would only break even or even perform at a loss, but the jobs allowed MAC to keep the company's equipment in use and its employees occupied. Plaintiff alleges that the failure to disclose these changes was an additional breach of the Agreement.

Kapitus filed suit in a Virginia state court in February 2021 against MAC, Mr. Hooker, and Ms. Estess. The Virginia defendants filed a demurrer, and the court held a hearing in March 2022. After argument, the judge said that he would sustain the demurrer as to the two individual defendants because it was not clear that they guaranteed payment, and the fraud claims against them were not pled with adequate specificity. The judge sustained the demurrer with respect to fraud in the inducement of the Agreement because it was not pled with specificity, but he allowed Kapitus an opportunity to amend and attempt to cure that deficiency. The judge expressed skepticism, however, as to whether Kapitus could pursue fraud claims because the loan was made by Invision Funding, and fraud claims may not be assigned under Virginia law. Finally, the judge found no basis for a claim for punitive damages. MAC did not challenge the breach of contract claim against it. The court asked counsel to prepare an order to reflect the ruling. See transcript of hearing at Doc. 21-3.

The order was apparently never entered because Kapitus nonsuited the Virginia action and then Kapitus, as agent for Invision Funding, LLC, filed this action against MAC and the guarantors, plus Michael Estess and the several LLCs to which MAC's assets were allegedly distributed. Defendants argue in their motions that Plaintiff engaged in forum

shopping by refiling the case in Louisiana after its initial lack of success in Virginia. Plaintiff responds that it dismissed in Virginia and filed in Louisiana after preliminary discovery in March 2022 in the Virginia case indicated that MAC, which represented that it had gone out of business in November 2020 and was broke, received $862,000 of loan proceeds through the SBA Paycheck Protection Program ("PPP") between April 2020 and January 2021. MAC made multiple transfers totaling hundreds of thousands of dollars to Mr. Estess; 318 Towing, LLC; Freedom Roofing, LLC; Sirman Hill, LLC; 318 Dirt Worx, LLC; and 318 Auto, LLC.

Plaintiff alleged that the several LLCs were established after MAC defaulted on the Agreement and around the time that MAC allegedly went out of business. The LLCs are alleged to operate in the same or similar industry as MAC, be owned or operated by the same or similar principals, and to use the same or similar addresses as MAC. The amended complaint filed in this court set forth count one (breach of contract) against MAC, Mr. Hooker, and Ms. Estess based on the Agreement and guaranty, and count two (fraudulent transfers) directed at all of the named defendants to seek a declaration that the transfers to Mr. Estess and the LLCs were invalid. Count two specifies that it is based on Virginia statutes and jurisprudence governing fraudulent transfer claims.

**Effect of the Forum Selection Clause**

The six-page Agreement between Plaintiff and MAC sets forth several terms and conditions. The guaranty signed by Mr. Hooker and Ms. Estess states that the terms of the Agreement are incorporated into the guaranty. The Agreement, which identifies MAC as "Merchant" and Invision Funding, LLC d/b/a Kapitus Servicing as "Purchaser," includes

a forum selection and choice of law provision in Paragraph 4.5.  MAC and the guarantors argue that the clause mandates that the claims against them be filed in a Virginia court, and this case must be dismissed.  Plaintiff responds that the provision limits where MAC and the guarantors may file suit, and it requires that they submit to jurisdiction in Virginia, but it does not limit where Plaintiff may file suit to enforce the Agreement.  The provision at issue states:

> **4.5 Bind Effect: Governing Law, Venue and Jurisdiction.**
> Merchant and Guarantor agree that any suit, action or proceeding to enforce or arising out of this Agreement shall be brought in any court in the Commonwealth of Virginia or in the United States District Court for the Eastern District of Virginia (the "Acceptable Forums"), and Merchant and Guarantor waive personal service of process. Merchant and Guarantor agree that the Acceptable Forums are convenient to them, submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. In the event a legal proceeding concerning this Agreement is initiated in any other forum, Merchant and Guarantor waive any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum, or to dismiss the action on the grounds of forum non conveniens. This Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with Virginia law (to the extent not preempted by federal law) without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for under this Agreement will be governed by the laws of the Commonwealth of Virginia. Merchant and Guarantor understand and agree that (I) PURCHASER and/or Kapitus Servicing are located in Virginia, (ii) all final credit decisions are made in Virginia, (iii) the Agreement is made in Virginia (that is, no binding contract will be formed until Merchant's signed Agreement is received and accepted in Virginia), and (iv) Merchant's payments are not accepted until received in Virginia." (Attached to Plaintiff's Complaint as Exhibit 1).

Plaintiff argues that a careful reading of the provision shows that it does not limit where Plaintiff may choose to file suit. Plaintiff may file in Virginia, and Merchant and

Guarantor may not object to the forum, but Plaintiff is not prohibited from filing suit elsewhere. Plaintiff points out that the Agreement says *Merchant and Guarantor* agree that any suit arising out of the Agreement shall be brought in Virginia, and *Merchant and Guarantor* waive service and agree that the Virginia forums are convenient to them. *Merchant and Guarantor* also waive any right to oppose a motion made by Plaintiff to transfer a case filed elsewhere to a Virginia forum.

Plaintiff points out that other provisions of the Agreement make express reference to Purchaser or Parties when Plaintiff or all parties are to be bound by a provision. For example, the "Parties" waive the right to trial by jury in Paragraph 4.9, and in Paragraph 4.10 the "Parties" waive certain rights with respect to class or representative actions. The forum selection clause did not use the term Parties. Instead, it expressly applied the forum limitations only to Merchant and Guarantor. Another example of a clause that is specific about its application is Paragraph 4.11 regarding arbitration. It states that Purchaser will not initiate arbitration, and Merchant and Guarantors may opt out of an arbitration provision by taking certain steps.

MAC and the guarantors argue that provisions such as their waiver of service and submission to jurisdiction indicate that the Agreement contemplates the filing of a suit by Plaintiff in Virginia. Those provisions would apply *if* Plaintiff chose to file suit in Virginia, but nothing in the provision prohibits Plaintiff from filing suit in another forum. MAC and the guarantors, however, may file a suit related to the Agreement only in Virginia, and they may not contest that forum if Plaintiff were to file suit there. Defendants argue that it is "plain and certain" that Plaintiff dictated in the Agreement that any litigation by any party

arising out of the Agreement had to be brought in Virginia, but Defendants cannot point to any text in the Agreement with express language to that effect.

Such one-sided or non-mutual forum selection clauses are not uncommon. Courts often recognize and enforce them. See, e.g., Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp., 838 F.2d 656, 659-60 (2d Cir. 1988) (rejecting argument that "a forum-selection clause that expressly limits only one party is unenforceable"); Wagley v. JP Morgan Chase Bank, N.A. as trustee of Mary Penney Wagley Irrevocable Tr., 2019 WL 13223235, *7 (S.D.N.Y. 2019) ("here the parties agreed to non-mutual language, and this Court is not free to re-write the clear terms of their agreement"); Mount Carmel Ministries v. Seaway Bank & Tr. Co., 2015 WL 13375901, *2 (S.D. Miss. 2015) ("the forum-selection clauses' one-sided nature does not render them unenforceable"); Graphic Sys., Inc. v. Avanti Computer Sys. Ltd., 2018 WL 1277007, *3 (D. Minn. 2018) ("Mutual obligations under a forum section (sic) clause are not required for enforcement."); and Silverman v. Carvel Corp., 192 F. Supp. 2d 1, 5 (W.D.N.Y. 2001) ("It is clear ... that 'the nonmutuality of the forum-selection clause does not render it invalid.'"). Thus, it is not unheard of, as Defendants suggest, to read a clause to limit the forum for suits filed by one party but not the other.

Defendants state that it might invalidate the entire Agreement if only one party/side of the Agreement is bound by the forum selection clause. Defendants are free to test that theory as a defense, but for current purposes the court need only decide that the forum selection clause did not prohibit Plaintiff from filing this action against the several Louisiana defendants in their home state of Louisiana. The Louisiana defendants can find

no express language in the Agreement that would require Plaintiff to instead sue them in Virginia. For these reasons, the motion to dismiss filed by MAC and the guarantors should be denied.

**Transfer Claims: Virginia or Louisiana Law**

The only aspect of the Amended Complaint that targets Michael Estess and the several Louisiana LLCs (the Transferee Defendants) is count two. That count states expressly that it is based on a claim of fraudulent transfer pursuant to Virginia statutes and jurisprudence. The Transferee Defendants present a motion to dismiss on the grounds that the count does not state a claim against them on which relief may be granted.

The Transferee Defendants argue that they are not parties to the Agreement or guaranty and, thus, are not bound by the Agreement's choice of law provision that specifies Virginia law. The Transferee Defendants represent that they have no connection to Virginia and are not subject to its jurisdiction or laws. They allow that Plaintiff may have a revocatory action against them pursuant to Louisiana Civil Code article 2036 et seq., but they contend that Plaintiff has not made allegations in the Amended Complaint that would support such a claim.

Plaintiff responds that the Transferee Defendants should be bound by the Agreement's choice of Virginia law provision because, even though they did not sign the Agreement, they are "closely related parties." In the alternative, Plaintiff urges that it has pled facts to support a Louisiana revocatory action, or it should be allowed to amend the complaint to do so. The Transferee Defendants reply that Plaintiff is "more than welcome

to amend their Complaint and adequately plead a revocatory action" against them. Doc. 36, pg. 4.

After this motion was briefed, the Fifth Circuit issued <u>Franlink Inc. v. BACE Servs., Inc.</u>, 50 F.4th 432 (5th Cir. 2022), which addressed whether non-signatories to an agreement may be bound to the contract's choice of forum provision under the "closely related" doctrine. The Court recognized the doctrine for the first time and set forth a few fundamental factors that should be considered in determining whether non-signatories are sufficiently closely related to be bound. This case differs in that Plaintiff urges that the defendants are subject to a choice of law provision rather than a choice of forum provision, but there is arguably enough similarity that the same or similar analysis may apply.

In light of <u>Franlink</u>, the absence of briefing on its effect, and the unopposed request by Plaintiff that it be allowed to amend the complaint, the best exercise of the court's discretion is to forgo deciding whether these non-signatory defendants may be subject to Virginia law based on the Agreement. Rather, Plaintiff should be allowed a reasonable opportunity to file a motion for leave to amend the complaint and (1) embrace the Louisiana revocatory claim that the defendants suggest is appropriate or, (2) if Plaintiff insists on pursuing a Virginia law claim, making any adjustments to its allegations that may be desired after consideration of the <u>Franlink</u> decision.

If Plaintiff sticks to Virginia law, it may be deep in the case before it gets a decision on whether that law is applicable to the Transferee Defendants. <u>Franlink</u> enumerated factors such as common ownership, benefits obtained from the contract, knowledge of the agreement, and awareness of the clause at issue. The Fifth Circuit stated that "the closely-

related doctrine is context specific and is determined only after weighing the significance of the facts relevant to the particular case at hand." <u>Franlink</u>, 50 F.4th at 442.  The <u>Franlink</u> case was decided after a trial at which the facts were fully developed.  Thus, a well-supported motion for summary judgment or trial will likely be required to definitively resolve the issue in most cases, though a court may be able to reject the applicability of the doctrine on a motion to dismiss if a complaint is particularly lacking in factual support.

The motion to dismiss filed by the Transferee Defendants should be denied. Plaintiff should be allowed 14 days to file a motion for leave to file an amended complaint that, after consideration of the issues discussed above, clarifies the basis for its claim against these defendants.

Accordingly,

It is recommended that the Motions to Dismiss (Docs. 20 & 21) be denied.  It is further recommended that Plaintiff be allowed 14 days from the entry of an order respecting this report and recommendation to file a motion for leave to file a second amended complaint and revise count two after consideration of the factors discussed in this report and recommendation.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of November, 2022.

*Mark L. Hornsby*
U.S. Magistrate Judge